(74 South. 591)

No. 22107.

SHREVEPORT MUT. BLDG. ASS'N v. WHITTINGTON et al.

(Oct. 6, 1916.  On Rehearing, March 12, 1917.)

*(Syllabus by the Court.)*

1. MECHANICS' LIENS ⬤�longdash315—MECHANICS' PRIVILEGES—CONTRACTOR'S BOND—RECOVERY AGAINST SURETY.

Question certified by Court of Appeal, Second District: "Was it necessary for said defendants, materialmen, to file sworn statements of their accounts with the owner of the building as a condition precedent to recovery of the amounts of such accounts as against the surety in case of the default of the contractor?" Answer: "No."

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 658.]

2. MECHANICS' LIENS ⬤�longdash315—MECHANICS' PRIVILEGES—CONTRACTOR'S SURETY BOND—NOTICE TO OWNER—STATUTES.

The surety sustained no loss by reason of the alleged failure to give notice to the owner. See section 1, Act No. 221 of 1914, pp. 418-420.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 658.]

Case Certified from Court of Appeal, Second Circuit.

Suit or concursus proceeding by the Shreveport Mutual Building Association against J. C. Whittington, contractor, his surety, and four materialmen. Judgment for the materialmen against the contractor, and question certified by Court of Appeal, Second Circuit, applying for instructions. Question answered in the negative.

Thatcher & Welsh and Elias Goldstein, all of Shreveport, for appellants C. C. Hardman Co., Friend Hardware Co., and Shreveport Long Leaf Lumber Co. J. S. Atkinson, of Shreveport, and J. Zach Spearing, of New Orleans, for appellee U. S. Fidelity & Guaranty Co. Grant & Grant, of New Orleans, amici curiæ.

LAND, J. The judges of the Court of Appeal of said circuit have presented for our consideration and instructions a question of law arising in the above-entitled cause, before them on appeal from the First judicial district court in and for the parish of Caddo.

The said judges state, in substance, that the suit is a concursus proceeding instituted under the provisions of Act 221 of 1914, by the plaintiff, owner of a building constructed by one J. C. Whittington, under the usual building contract, against said contractor, and his surety, and four certain furnishers of material who had caused their respective claims to be recorded, for the purpose of having said claims adjudicated, as between said defendants; that plaintiff deposited in the registry of the district court the sum of $412.50, balance due by the plaintiff to the contractor at the time the claims were filed; and that the surety company excepted on the grounds:

That three of said firms failed to file sworn statements of their claims with the plaintiff as provided by the statute, and therefore had no right to record the same against said owner; and that the fourth firm failed to file either a sworn statement of its claim

with the owner, or to record such statement as provided by the statute.

That this exception was overruled by Hon. John R. Land of the district court, holding that the filing of such statements with the owner was not necessary to enable the materialmen to recover against the surety company.

That the case went to trial on its merits before Hon. R. D. Webb, one of the three judges of the same district, and resulted in a judgment sustaining the exception of the surety company; the judge holding that under the provisions of said Act 221 of 1914, the filing of a sworn statement of the account of the materialmen with the owner of the building was a condition precedent to recovery against the surety on the bond of the contractor.

Judgment, however, was rendered in favor of the materialmen against the contractor, and the fund in the registry of the court was ordered distributed pro rata among them.

[1] The judges of the Court of Appeal, annexing copies of the conflicting opinions of the two district judges to their statement, inquire:

"Was it necessary for the said defendants (materialmen) to file sworn statements of their accounts with the owner of the building as a condition precedent to recovery of the amounts of such accounts as against the surety in case of default of the contractor."

This case presents no dispute or controversy whatever between the building association and the four furnishers of material; but the respective claims of the latter are urged solely against the contractor and the surety on his bond conditioned for "the payment of all subcontractors, workingmen, laborers, mechanics and furnishers of materials by the undertaker, contractor," etc., and "made in favor of the owner, subcontractor, workmen, laborer, mechanics and furnishers of materials jointly as their interest may occur." Section 1, Act 221 of 1914.

In the same section we find the following declarations:

"The surety herein shall be limited to such defenses on only as the principal of the bond can make * * * and said surety * * * is to stand in the place of a defaulting undertaker, contractor, master mechanic or engineer."

The first sentence of the same section provides that the recordation of the building contract shall create a lien and privilege on the building and grounds or other work "in favor of the said undertaker, contractor, master mechanic, engineer, subcontractor, workman, laborer, mechanic or furnisher of materials as their interest may occur."

Act 221 of 1914 amends and re-enacts section 1 of Act 167 of 1912, entitled:

"An act relative to building contracts in this state; providing for the bond to be given therein, for the protection of the owner; subcontractor; workman; laborer; mechanic and furnishers of materials, for the recordation of the same, and the proceedings to be had thereunder."

What is obscure in the provisions of Act 221 of 1914 should be read in the light of the intent to protect the workman, laborer, mechanic, and the materialman, by lien, privileges, and surety, which shines forth in the title and body of the statute.

After setting forth the particular provisions on which the surety company relies, the same section limits the defense of the surety to only such as the principal on the bond (contractor) can make.

Such provisions read as follows.

"Every person having a claim against the undertaker, contractor, master mechanic or engineer shall, after the date of the completion of the said work by, or the date of default of the undertaker, contractor, master mechanic or engineer, file a sworn statement thereof with the owner and record a sworn statement thereof, or his contract if it has been reduced to writing in the office of the recorder of mortgages for the parish in which said work has been done, within thirty days after the registry of notice with the recorder of mortgages where the work is done, by the owner of his acceptance of the work, until which time the delay to file privileges will not run.

"If at the expiration of the said thirty days there are no such recorded claims filed, the

recorder of mortgages shall, upon written demand of any party interested, cancel and erase from the books of his office all inscriptions resulting from the recordation of said contract or bond.

"If at the expiration of said thirty days there are such recorded claims filed, the owner shall file a petition in a court of competent jurisdiction citing said claimants, the undertaker, contractor * * * against whom said claims are filed and the surety of said bond, and the owner shall assert whatever claim he has against any or all of them in said petition, and require said claimants to assert their claims, and all of said claims shall be tried in concursus. * * *

"If no objections are made by any of the said claimants to the sufficiency or solvency of said bond within ten days after the filing of said concursus, the clerk of the court shall give to any party interested a certificate to that effect and on presentation of said certificate to the recorder of mortgages he shall cancel and erase all inscriptions created by the recordation of said contract, bond or said claims."

The section next provides for the trial of objections to the sufficiency or solvency of the surety, or that the owner had failed to exact bond, or cause the same to be recorded, as required by the act, and in such cases makes the owner liable to the same extent as the surety would have been, and declares that all subcontractors, workmen, laborers, mechanics, and furnishers of materials shall have a first privilege on said building or improvement to secure the amount due them when their claims are recorded as herein provided.

"The surety herein shall be limited to such defenses on only as the principal on the bond can make."

In the case at bar the owner had complied with all the requirements of the statute as to the building contract and bond, and had deposited the balance due by it in the registry of the court, to be litigated over by the materialmen and the contractor and his surety. The contractor and his surety were bound by formal covenant to pay the claims of the furnishers of materials.

Under the express terms of the statute, the surety is limited to only such defenses as the contractor can make.

Three of the materialmen recorded their sworn statements within the 30 days required by the statute. The fourth recorded his sworn statement 4 days after the expiration of the legal delay.

This concursus suit was brought more than a month after the last recordation, and the owner cited the four furnishers of material as claimants of record.

Having no claims in personam against the owner, the only claim that the furnishers of materials could have urged against the plaintiff was one of privilege against the building and grounds.

The service of a sworn statement of each claim on the owner served only the purpose of notice, which was waived by the association.

This question of notice vel non to the building association does not concern the contractor or his surety, who under the statute are not entitled to previous personal notice by service of sworn statements of claims for material and labor.

It is manifest that, if the claims for material are justly due by the contractor, the surety is interested in their payment pro tanto out of the fund in court.

The fallacy in the reasoning of counsel for the surety company consists in the assumption that the service of a sworn account on the owner was necessary to preserve the contract claim of furnisher of material against the contractor and his surety.

We cannot perceive on what legal or equitable principle such failure can release the contractor and his surety from their obligation to pay for materials purchased and used in the construction of the building.

[2] At most, the surety would be entitled to a credit for any loss occasioned by such failure. But in instant case no damage has resulted to the surety, as the failure to serve sworn copies of the statements on the owner has not prevented the materialmen from

recovering the balance due by the owner to the contractor.

The question before the court is res nova, and no useful purpose would be subserved by reviewing cases not in point, though perhaps analogous.

We therefore answer the question propounded by our learned Brothers of the Court of Appeal in the negative.

See concurring opinion of PROVOSTY, J., 74 South. 593.

### On Rehearing.

PROVOSTY, J. The mistake which the learned counsel for the surety company make is in not distinguishing between the owner, between whom and the materialman there is no contractual relation, on whose part there is no liability except that created by law against, or without, his consent, and the surety company who has voluntarily entered into a contract to pay the materialmen in case the contractor does not, and has received a consideration for thus engaging itself.

In not one decision of this court has it ever been held that the surety was released by nonservice of an account upon the owner; and this court could not possibly so hold unless prepared to hold that the contractor also is released, for the statute in express terms provides that:

"The surety herein shall be limited to such defenses only as the principal on the bond can make."

This express provision cannot be ignored; and, surely, no one would say that the contractor was released from paying the materialmen by the failure of the latter to serve an account upon the owner.

The learned counsel of the surety company seem to think that this statute was enacted in the interest of the surety on the contractor's bond, whereas the statute expressly declares that the purpose has been simply to require that the bond be given.

Why the law should be solicitous for the protection of surety companies, the learned counsel would, we imagine, be embarrassed to suggest any reason.

The decree heretofore handed down herein is reinstated and made the final judgment of this court.

SOMMERVILLE, J., concurs.